**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| **MARTA BRYCELAND, derivatively on behalf of Abiomed, Inc.,** | ) ) ) ) | |
| Plaintiff, | ) ) | **Civil Action No.** **13-10212-FDS** |
| v. | ) ) | |
| **MICHAEL R. MINOGUE, W. GERALD AUSTEN, LOUIS E. LATAIF, DOROTHY E. PUHY, MARTIN P. SUTTER, HENRI A. TERMEER, PAUL G. THOMAS, and ABIOMED, INC.,** | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER ON**
**DEFENDANTS' MOTIONS TO DISMISS**

**SAYLOR, J.**

This is a shareholder derivative action. Plaintiff Marta Bryceland has brought suit on behalf of, and for the benefit of, nominal defendant Abiomed, Inc., asserting claims against individual members of its board of directors. Plaintiff contends that these directors breached their fiduciary duties in failing to adequately respond to, and disclose the potential consequences of, warning letters that the Food and Drug Administration sent to Abiomed about the marketing and labeling of one of its products. Defendants have moved to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6) and 23.1 for failure to make demand on the board of directors. For the reasons set forth below, the motion will be granted.

**I.     Background**

The facts are stated as alleged in the complaint.[1]

Defendant Abiomed, Inc., is a Delaware corporation with its principal place of business in Massachusetts. Abiomed develops biomedical products designed to assist or replace the pumping function of the human heart. The company's marketing of one such product, the Impella 2.5, is at the center of this dispute.

Defendants Michael R. Minogue, W. Gerald Austen, Louis E. Lataif, Dorothy E. Puhy, Martin P. Sutter, Henri A. Termeer, and Paul G. Thomas are directors of Abiomed. Minogue is also the Chairman, President, and Chief Executive Officer of Abiomed; none of the other directors hold corporate offices at Abiomed.

Plaintiff Marta Bryceland is a current shareholder of Abiomed and was a shareholder during the time period that the events giving rise to this action occurred—August 5, 2011, through October 31, 2012.

In June 2011, the FDA sent Abiomed a warning letter alleging that some of its promotional materials appeared to market the Impella 2.5 device for uses that were not approved by the FDA. Abiomed subsequently disclosed the receipt of that warning letter in its 2011 Second Quarter Report (Form 10-Q) filed with the Securities and Exchange Commission.

In April 2012, Abiomed received a second letter from the FDA alleging that some of its promotional materials continued to market the Impella 2.5 device in ways that did not comply

---

[1] The Court also draws on exhibits to the complaints and other uncontested documents on which the complaint relies. *See Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998) ("When . . . a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).").

with FDA regulations. Abiomed disclosed its receipt of the second letter in its 2012 Annual Report (Form 10-K) filed with the SEC.

On November 1, 2012, Abiomed issued a press release notifying the public that the United States Attorney's Office for the District of Columbia was conducting an investigation of the marketing and labeling of the Impella 2.5 device, and that it had received an administrative subpoena under the Health Insurance Portability and Accountability Act, with which it intended to cooperate fully. As a result of that announcement, the share price of Abiomed's stock sharply declined.

The complaint alleges that, notwithstanding those disclosures, Abiomed's SEC filings and other media communications included "overly positive" statements reporting its financial results, and failed to disclose that it was "improperly" marketing the Impella 2.5 device. The complaint contends that the individual directors are liable for allowing those misleading disclosures to be included in SEC filings and for failing to disclose the potential effect of the regulatory investigations on Abiomed's operations and financial results. Plaintiff, as a shareholder of Abiomed, has brought a derivative suit, asserting the right to stand in the shoes of the company and pursue a claim against Abiomed's CEO and directors. Plaintiff made no demand upon the board of directors before commencing this action.

## II. Standard of Review

### A. Failure to State a Claim Under Rule 12(b)(6)

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir.

1999)).  To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if the complaint's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief."  *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

### B. Rule 23.1 Director Demand Pleading Requirements

Fed. R. Civ. P. 23.1 imposes additional pleading requirements on plaintiffs bringing shareholder derivative actions.  Rule 23.1(b) provides that the complaint must "state with particularity:  (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort."  The court applies state law to determine whether the facts alleged are sufficient to demonstrate that the demand on directors was adequate or would have been futile and thus should be excused.  *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96-97 (1991) (finding that Rule 23.1 is a procedural rule that "clearly contemplates both the demand requirement and the possibility that demand may be excused, [but] does not create a demand requirement of any particular dimension . . . [and the court] must identify the source and content of the substantive law that defines the demand requirement").  Here, it is

undisputed that Delaware law governs the adequacy of, or futility of, director demand.

**III.    Analysis**

    **A.    Delaware Law of Director Demand**

Under Delaware law, the decisions of a board of directors are generally protected by the business judgment rule. The business judgment rule creates a presumption that "the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company." *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984) (internal citations omitted). As a result of that presumption, demand on the board is considered futile only in situations "where the facts are alleged with particularity which create a reasonable doubt that the directors' actions were entitled to the protections of the business judgment rule." *Id.* at 808.

Both parties agree that Delaware has two alternative tests for determining whether a plaintiff's failure to make a demand on the board of directors should be excused on the ground of futility. The parties dispute, however, which of the two tests applies to the situation presented here.

*Aronson* established the test that is applicable where the allegations of a derivative complaint implicate an allegedly improper transaction effectuated by the board of directors. 473 A.2d 805. When a plaintiff makes such allegations, demand is considered futile, and should be excused, where those particularized allegations create a reasonable doubt that "(1) the directors are disinterested and independent [or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Id.* at 814.

*Rales v. Blasband*, 634 A.2d 927 (Del. 1993) established a more stringent test that is

applicable in a few limited situations. One such situation is where the allegations of a derivative complaint implicate a violation of the board of director's oversight duties (in other words, a failure to act), rather than an affirmative business decision of the board. *Id.* at 934. When a plaintiff makes such allegations, demand is considered futile and should be excused only where "the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, [a majority of] the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Id.*

Plaintiff contends that the *Aronson* test applies, based on the theory that a "conscious failure to act" is considered an affirmative business decision of the board. Defendant, on the other hand, contends that the complaint alleges classic failure of oversight allegations that should be subject to the more stringent *Rales* test.[2]

A Delaware court recently articulated the distinction between situations where the differing standards apply as follows: "[f]or conscious board decisions— whether to act or not—the two-pronged *Aronson* test applies. A board's failure to act absent a conscious decision to refrain from acting, such as a failure to supervise, is analyzed under *Rales*." *In re Dow Chem. Co. Derivative Litig.*, 2010 Del. Ch. LEXIS 2 (Del. Ch. Jan. 11, 2010). Federal courts in other

---

[2] The distinction between the *Aronson* and *Rales* tests may be a distinction without a difference. Indeed, as at least a few Delaware courts have remarked, "*Aronson* and *Rales* have been described as complementary versions of the same inquiry." *In re China Agritech, Inc.*, 2013 Del. Ch. LEXIS 132 (Del. Ch. May 21, 2013) (citing *David B. Shaev Profit Sharing Account v. Armstrong*, 2006 Del. Ch. LEXIS 33 (Del. Ch. Feb. 13, 2006); *Guttman v. Huang*, 823 A.2d 492, 501 (Del. Ch. 2003) ("At first blush, the Rales test looks somewhat different from Aronson, in that [it] involves a singular inquiry . . . . Upon closer examination, however, that singular inquiry makes germane all of the concerns relevant to both the first and second prongs of Aronson."); DONALD J. WOLFE, JR. & MICHAEL A. PITTENGER, CORPORATE AND COMMERCIAL PRACTICE IN THE DELAWARE COURT OF CHANCERY § 9.02[b][3][iii], at 9-97 (2011)).

circuits, applying Delaware law, have similarly held that the *Aronson* test applies to allegations that the board of directors made a considered decision not to act. *In re Abbott Labs. Derivative S'holders Litig.*, 325 F.3d 795, 805 (7th Cir. 2003) (distinguishing between the complaint's allegations "that the directors 'knowingly' in an 'intentional breach and/or reckless disregard' of their fiduciary duties 'chose' not to address the FDA problems in a timely manner" and allegations of an "unconsidered failure to take action by the directors"); *In re Pfizer Inc. S'holder Derivative Litig.*, 722 F. Supp. 2d 453, 460 (S.D.N.Y. 2010) (applying the *Aronson* test to allegations that the defendant directors "knew of a high probability that Pfizer was continuing to purposely promote off-label marketing and deliberately decided to let it continue by blinding themselves to that knowledge.").

### B.     Allegations of the Complaint

The complaint generally alleges that the director defendants "were directly responsible for authorizing, permitting the authorization of, or failing to monitor the practices that resulted in violations of applicable laws as alleged herein . . . [and] had knowledge of, actively participated in, approved, and/or acquiesced in the wrongdoing alleged herein or abdicated his or her responsibilities with respect to this wrongdoing." (Compl. at ¶ 54). It more specifically alleges that the director defendants breached their fiduciary duties by "allowing the material misstatements to be issued and by failing to disclose material information concerning [Abiomed's] marketing and labeling practice, and more importantly, the FDA's conclusions regarding [Abiomed's] marketing and labeling practices." (Id. at ¶ 41).

Defendants make much of the fact that these allegations, and others contained in the complaint, describe passive actions, such as "failing to monitor" and "allowing" certain allegedly

improper activities.  However, the operative distinction is not the nature of the board of director's conduct as action or inaction in the abstract, but rather whether the board actually made a conscious informed decision to engage in the allegedly wrongful conduct.  *See, e.g., In re Dow Chem.*, 2010 Del. Ch. LEXIS 2.

Here, the particularized allegations of the complaint make no mention of what the board of directors knew or did not know.  Indeed, at oral argument, plaintiff's counsel insisted that the board's knowledge of the FDA warning letters and alleged ongoing violations could simply be assumed due to the small size of the company.  While it is certainly the case that plaintiff is "entitled to all reasonable inferences that logically flow from the particularized facts alleged," the only relevant inference that logically flows from the facts alleged is that the board had knowledge of the FDA warning letters and their contents.  *Brehm v. Eisner*, 746 A.2d 244, 255 (Del. 2000).  The complaint alleges no particularized facts that support the inference that the board had knowledge of, or approved, any further marketing that did not comply with FDA regulations.  While the complaint does include general allegations that director defendants "had knowledge of, actively participated in, approved, and/or acquiesced in the wrongdoing," the pleading requirement of Rule 23.1 is "not satisfied by conclusory statements." *Brehm,* 746 A.2d at 254.  Accordingly, the Court finds that the complaint does not allege with sufficient particularity that any failures in oversight or material omissions in financial statements were conscious decisions of the board.  Therefore, the Court will apply the *Rales* test to determine whether failure to make demand on the board should be excused.

    **C.**     **Application of the *Rales* Test**

The *Rales* court held that requiring demand in situations where the directors are sued

derivatively for failures of oversight is "consistent with the board's managerial prerogatives because it permits the board to have the opportunity to take action where it has not previously considered doing so." *Rales*, 634 A.2d at 934 n. 9. The court then held that demand could be excused as futile in such a situation only when the particularized allegations of the complaint "creat[e] a reasonable doubt that a majority of the Board would be disinterested or independent in making a decision on a demand." *Id. at 930.*

As a preliminary matter, it is well-established under Delaware law that "an allegation that a majority of directors approved, participated, or acquiesced in a challenged transaction will not, in and of itself, establish demand futility." *Grobow v. Perot*, 526 A.2d 914, 924 (Del. Ch. 1987); *see also Kaufman v. Belmont,* 479 A.2d 282, 288 (Del. Ch. 1984) ("[T]he mere approval of a corporate action, absent any allegation of particularized facts supporting a breach of fiduciary duty or other indications of bias, will not disqualify the director from subsequently considering a pre-suit demand to rectify the challenged transaction."). Accordingly, the complaint's particularized allegations, at a minimum, must suggest more complicity on the part of the director defendants in order to create a reasonable doubt as to their independence or disinterestedness.

      **1.**    **<u>Independence</u>**

The concept of independence concerns each director's ability to make his or her own decisions free from external compulsion. A director is considered independent if his or her decisions were "'based on the corporate merits of the subject before the board rather than extraneous considerations or influences.'" *Rales*, 634 A.2d at 936 (quoting *Aronson*, 473 A.2d at 816). Allegations that tend to show that a director was "beholden" to some other person or

entity, including the company itself, may create a reasonable doubt as to that director's independence. *Rales*, 634 A.2d at 936 (quoting *Aronson*, 473 A.2d at 815).

Here, the complaint makes the follow allegations concerning the director defendants' potential lack of independence: (1) that defendants Minogue, Sutter and Thomas have served on other boards together; (2) that defendant Minogue serves as the CEO, President, and Chairman of Abiomed; and (3) that all of the directors hold substantial financial interests in, and receive compensation from, Abiomed. (Compl. at ¶ 48).

As to the service on other boards together, at least one Delaware court has expressly held that such relationships do not suggest a lack of independence. *In re Dow Chem.*, 2010 Del. Ch. LEXIS 2, 32-33 (Del. Ch. Jan. 11, 2010) ("That directors of one company are also colleagues at another institution does not mean that they will not or cannot exercise their own business judgment with regard to the disputed transaction."). Here, there are no supporting allegations that suggest reasons why the three directors who have served on other boards together might be "beholden" to one another when making decisions as to Abiomed.

As to the financial interest of all the directors in Abiomed, Delaware courts have repeatedly found that the compensation of directors, without more, does not suggest a lack of independence. *See, e.g., Grobow v. Perot*, 539 A.2d 180, 188 (Del. 1988) (holding that demand was not excused where plaintiff "only aver[red] . . . that all GM's directors are paid for their services as directors"); *Freedman v. Adams*, 2012 WL 1345638, at *6 (Del. Ch. Mar. 30, 2012) (holding that plaintiff must allege with particularity that directors' compensation exceeds what is "usual and customary" to suggest that they lacked independence); *In re Limited, Inc. S'holders Litig.*, 2002 WL 537692, at *4 (Del. Ch. Mar. 27, 2002) ("allegations as to one's position as a

director and the receipt of director's fees, without more . . . are not enough for purposes of pleading demand futility"). Here, there are no supporting allegations that suggest reasons why the directors' compensation in this case was in some way exceptional.

The final issue concerns defendant Minogue's position as the CEO, President, and Chairman. As noted, Delaware courts have generally held that merely receiving compensation for service on a board of directors does not suggest a lack of independence. However, courts have held that there is reason to doubt the independence of directors who also serve as subordinate officers in the company due to their "substantial financial interest in maintaining their employment positions." *Rales,* 634 A.2d at 93; *see also Mizel v. Connelly*, 1999 WL 550369, at *3 (Del. Ch. Aug. 2, 1999) (finding reasonable doubt as to whether directors who also served as employees could "impartially consider a demand calling upon them to take action materially adverse to [their boss's] interests."). Indeed, the First Circuit recently found that such a lack of independence may have existed where a director was also an executive in the company. *Unión de Empleados de Muelles de Puerto Rico PRSSA Welfare Plan v. UBS Fin. Servs. Inc. of Puerto Rico*, 704 F.3d. 155, 165-66 (1st Cir. 2013) (holding that where a director serves as "an executive employee" of an entity and was "involved at a high level" at the company, "these facts alone are sufficient to create a reasonable doubt that he could be disinterested and independent in evaluating plaintiffs' demand in this case"). However, the Court need not decide here whether director-officers are never considered to be independent as a matter of law. Because defendant Minogue was the only director who also served as an officer of Abiomed, even if the Court were to hold that the allegations of the complaint create a reasonable doubt as to his independence, a majority of the board (the other six members) would still be considered independent for the

reasons set forth above. Accordingly, the Court need not decide whether the allegations concerning defendant Minogue's position within Abiomed created a reasonable doubt as to his independence.

For the foregoing reasons, the Court finds that the particularized allegations of the complaint do not create a reasonable doubt as to the independence of a majority of the directors.

### 2. **Interestedness**

While independence concerns potential external control over a director's decision, interestedness concerns a director's personal financial motivations. A director is expected to be disinterested in the decisions of the board—meaning that he or she should not personally benefit more, or less, from one course of action as opposed to another. Put another way, "a director is considered interested where he or she will receive a personal financial benefit from a transaction that is not equally shared by the stockholders. . . . [or] a corporate decision will have a materially detrimental impact on a director, but not on the corporation and the stockholders." *Rales*, 634 A.2d at 936.

The complaint makes the following allegations concerning the director defendants' interestedness: (1) that all of the directors face a substantial likelihood of personal liability; (2) that defendant Minogue serves as the CEO, President, and Chairman of Abiomed; (3) that defendant Thomas previously served as a consultant for Abiomed and received stock options as part of his compensation; (4) that all of the directors hold stock options in, and receive compensation from, Abiomed; and (5) that all of the directors were involved in the alleged wrongdoing and would be compelled to sue themselves.

The fifth allegation may be readily addressed. It is well-established under Delaware law

that a director is not rendered interested simply because he or she is named as a defendant in the action and would therefore have been forced to sue himself or herself in response to a demand. *See Aronson*, 473 A.2d at 818.  Without such a rule, the director demand requirement would be illusory and easily avoided by artful pleading.  As the Delaware Supreme Court explained in *Aronson*:

> Plaintiff's final argument is the incantation that demand is excused because the directors otherwise would have to sue themselves, thereby placing the conduct of the litigation in hostile hands and preventing its effective prosecution.  This bootstrap argument has been made to and dismissed by other courts.  Its acceptance would effectively abrogate Rule 23.1 and weaken the managerial power of directors.

*Id.*  (citing *Lewis v. Graves*, 701 F.2d 245, 248-49 (2d Cir. 1983); *Heit v. Baird*, 567 F.2d 1157, 1162 (1st Cir. 1977); *Lewis v. Anselmi*, 564 F. Supp. 768, 772 (S.D.N.Y. 1983)).  Accordingly, the Court finds that there is no reasonable doubt as to the director defendants' disinterestedness on the grounds that they were involved in the alleged wrongdoing and would be compelled to sue themselves.

As to the second allegation, which concerns defendant Minogue, the issue need not be resolved.  As noted, whether or not his position in Abiomed rendered him interested is irrelevant to the ultimate determination of this motion, because he is only one member of a seven-member board of directors.

As to the third and fourth allegations, which concern the compensation of the directors in cash and stock options, there is no reasonable doubt as to the directors' disinterestedness.  First, as explained above, a director is interested when he or she has a financial stake in the transaction that "is not equally shared by the stockholders." *Rales*, 634 A.2d at 936.  To the extent that the directors' compensation included stock and stock options, their financial interests were aligned

with stockholders' interests. Accordingly, the receipt of stock options could not cast doubt on defendant directors' disinterestedness. Second, to the extent that the directors received cash compensation, the complaint contains no particularized allegations as to how their compensation would have been affected by their decision whether or not to sue in response to a potential demand. Furthermore, the Delaware decisions cited above for the proposition that compensation alone, without more, is not enough to cast doubt on a director's independence apply with equal force as to a director's interestedness.

As to the remaining allegation—that all of the directors face a substantial likelihood of personal liability—the question of interestedness requires closer analysis. Under Delaware law, it is well-established that "the mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors." *Aronson*, 473 A.2d at 815. Instead, to create a reasonable doubt as to disinterestedness, the particularized allegations of the complaint must present "a substantial likelihood of director liability." *Id.*

Under Delaware law, personally liability for inaction or failures in oversight by directors "requires a showing that the directors knew they were not discharging their fiduciary duties in good faith." *Stone v. Ritter*, 911 A.2d 362, 369-70 (Del. 2006). In other words, the particularized allegations must demonstrate that the directors engaged in "intentional dereliction of duty, a conscious disregard for [their] responsibilities." *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 62, 66 (Del. 2006).

Here, the complaint specifically alleges that the directors violated their fiduciary duties by "allowing" material misstatements about the resolution of the dispute with the FDA and by

14

"failing to disclose" Abiomed's improper marketing and labeling practices in the company's SEC filings. The complaint also includes conclusory allegations that the directors had knowledge of and/or approved "the wrongdoing alleged." Such allegations lack the particularity required to satisfy Rule 23.1. The complaint makes no particular allegations as to what the directors knew, or what they approved of, or when. It is true that the complaint alleges the content of the SEC filings with particularity. Unfortunately for plaintiff, however, those filings suggest that the directors were exercising their duties in good faith. (See, e.g., Compl. at ¶ 34 (quoting a passage from Abiomed's Form 10-Q, filed on August 5, 2011, which disclosed the receipt of the FDA warning letter in June 2011 and indicated that the company was cooperating with the FDA. It also included the disclaimer that "[a]lthough we believe that this issue has been resolved, if similar matters come up in the future, we may not be able to resolve them without facing significant consequences.")). Those allegations, even when read in the light most favorable to the plaintiff, do not plead bad faith with sufficient particularity to present a substantial likelihood of personal liability that would cast doubt on the director defendants' disinterestedness.

Accordingly, and for the foregoing reasons, the complaint does not create a reasonable doubt as to the disinterestedness of a majority of the directors. Because it does not, demand on the directors cannot be excused. Accordingly, the defendant's motion to dismiss pursuant to Rule 23.1 will be granted.

### D.   Rule 12(b)(6) Analysis

Because the complaint fails to meet the requirements of Rule 23.1, the Court need not reach the question of whether the complaint fails to state a claim upon which relief can be

granted.

## IV. Conclusion

For the foregoing reasons, defendant's motion to dismiss is GRANTED.

**So Ordered.**

                                             /s/ F. Dennis Saylor
                                             F. Dennis Saylor IV
                                             United States District Judge

Dated: June 21, 2013